1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

2:11-CV-1173 JCM (CWH)

ARCHWAY INSURANCE SERVICES, LLC, et al.,

Plaintiff(s),

v.

JAMES HARRIS, et al.,

Defendant(s).

**ORDER**

Presently before the court is Archway Insurance Services' ("Archway"), Union One Insurance Group's ("Union One"), Nevada Investment Partners' ("NIP"), and Trinity Capital Management Group's ("Trinity") (collectively "plaintiffs") motion to voluntarily dismiss a portion of count II of the complaint. (Doc. # 103). Defendants James Harris, Harris Consulting Services, Inc., and Gregory Harris ("defendants") have responded (doc. # 113), and plaintiffs have replied (doc. # 119).

Also before the court is defendants' second motion for summary judgment. (Doc. # 102). Plaintiffs have responded (doc. # 116), and defendants have replied (doc. # 125).

Finally, before the court is plaintiffs' motion to dismiss defendants' counterclaims. (Doc. # 101). Defendants have responded (doc. # 118) and plaintiffs have replied (doc. # 124).

**I.    Background Facts**

This matter arises out of the financing and purchase of the Harris Agency ("THA"), an insurance business, and was originally filed in the Eastern District of Pennsylvania.  Defendants

**James C. Mahan**
**U.S. District Judge**

James Harris and Greg Harris are father and son, respectively. (Doc. # 102 at 2). Both James Harris and Greg Harris are insurance producers. (Doc. # 102 at 2). THA was the employer of James and Greg Harris for several years through 2010. (Doc. # 102 at 2). THA was owned by plaintiff NIP. (Doc. # 102 at 2). NIP was formed for the purpose of owning THA and was owned by the same group of persons who are the principals of the plaintiff-entities in this case. (Doc. # 102 at 3).

Prior to his employment with THA, James Harris worked for an insurance agency called Brown & Brown Insurance of Nevada, Inc. ("Brown & Brown"). (Doc. # 102 at 4). In July 2007, James Harris discussed with Brown & Brown the possibility of joining his son, Greg, at THA. (Doc. # 102 at 4). James Harris later left Brown & Brown. In response, Brown & Brown filed suit against defendants James and Greg Harris in Nevada state court for diverting its book of business in violation of its non-compete agreements with Brown & Brown. (Doc. # 102 at 4). Thereafter, the parties agreed to engage in mediation to discuss THA's possible purchase of the Brown & Brown book of business James Harris had been handling. (Doc. # 102 at 4). The book of business focused on commercial accounts largely in the construction industry in Las Vegas, Nevada. (Doc. # 102 at 5).

While in discussions about the purchase of the book of business from Brown & Brown, James Harris requested that a loan be made to Dianne Curry, a current or proposed employee of the Harris Agency, for her use in purchasing a house. (Doc. # 116 at 6). Plaintiffs allege James Harris stated he would repay the $25,000. (Doc. # 116 at 6). Plaintiffs claim Harris represented he was unable to loan the money directly because he was on the board of the bank, and was thus not able to make personal loans for real estate transactions. (Doc. # 116 at 6). In response to the request, plaintiff Union One sent $25,000 to THA to be used to pay Ms. Curry. (Doc. # 116 at 6).

During negotiations over the book of business at Brown & Brown, a production report dated June 22, 2007 was created for the book. (Doc. # 116 at 3). The production report showed an annual revenue of $3.2 million. (Doc. # 116 at 4). On October 18, 2007, the defendants and Brown & Brown signed a settlement agreement that was filed with the Eighth Judicial District Court of Clark County, Nevada. (Doc. # 102 at 5). In the settlement, THA agreed to purchase Brown & Brown's book of

James C. Mahan
U.S. District Judge

1     business for $5.25 million. (Doc. # 102 at 5; doc. # 116 at 4). THA, by funding obtained through

2     lenders, was to pay Brown & Brown in three installments: 50% (or $2,625,000) to be paid after

3     execution; and two payments of 25% ($1,312,500) each due to be made later. (Doc. # 116 at 4).

4          By October 2008, the end of the first year of operations after the purchase, the revenue

5     from the book of business of James Harris was approximately $1,400,000 less than the $3,200,000

6     that had been represented. (Doc. # 116 at 5). The amount of revenue generated from the book of

7     business was insufficient to repay the loans. (Doc. # 116 at 5).

8          As a result, THA filed a Chapter 11 petition on January 20, 2009, in the bankruptcy court in

9     the Eastern District of Pennsylvania. (Doc. # 102 at 6). As the bankruptcy was pending, Greg Harris

10    filed a motion to appoint a Chapter 11 trustee to manage THA. (Doc. # 102 at 6). On June 10, 2010,

11    that court entered an order granting the motion to appoint a Chapter 11 trustee to manage THA.

12    (Doc. # 102 at 6). After the trustee was appointed, he made attempts to sell the THA book of

13    business to various parties. (Doc. # 102 at 6). Greg Harris reached an agreement with the trustee for

14    the purchase and sale of the THA book of business to Greg Harris. (Doc. # 102 at 6).

15         On October 28, 2010, the bankruptcy court held an evidentiary hearing and granted the

16    trustee's motion to approve the sale of THA's assets to Greg Harris. (Doc. # 102 at 7). THA's book

17    of business included the Brown & Brown book of business that THA had purchased at the

18    conclusion of the 2007 lawsuit filed by Brown & Brown. (Doc. # 102 at 5).

19         The next day, plaintiffs filed the present lawsuit against defendants in the Eastern District of

20    Pennsylvania. (Doc. # 102 at 8). Upon motion of all of the defendants, the portion of the case relating

21    to the defendants herein, (James Harris, Harris Consulting Services, Inc. and Gregory Harris) was

22    transferred to this court, and the portion relating to various bank defendants was transferred to the

23    United States District Court for the District of Kansas. Only counts one and two of the complaint for

24    fraud and breach of contract are being litigated in this district.

25 **II.**     **Legal standard for motion to dismiss**

26         A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can

27    be granted." FED. R. CIV. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain

28

**James C. Mahan**
**U.S. District Judge**

1  statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *Bell*

2  *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While Rule 8 does not require detailed factual

3  allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements

4  of a cause of action." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citation omitted).  "Factual

5  allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555.  Thus,

6  to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim

7  to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (citation omitted).

8        In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when

9  considering motions to dismiss.  First, the court must accept as true all well-pled factual allegations

10  in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id*. at 1950.

11  Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not

12  suffice. *Id*. at 1949. Second, the court must consider whether the factual allegations in the complaint

13  allege a plausible claim for relief. *Id*. at 1950. A claim is facially plausible when the plaintiff's

14  complaint alleges facts that allows the court to draw a reasonable inference that the defendant is

15  liable for the alleged misconduct. *Id*. at 1949.

16        Where the complaint does not permit the court to infer more than the mere possibility of

17  misconduct, the complaint has "alleged – but not shown – that the pleader is entitled to relief." *Id*.

18  (internal quotations omitted).  When the allegations in a complaint have not crossed the line from

19  conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

20  **III.    Legal standard for summary judgment**

21        The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings,

22  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

23  show that "there is no genuine issue as to any material fact and that the movant is entitled to a

24  judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to

25  isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24

26  (1986).

27  . . .

28

James C. Mahan
U.S. District Judge

1    In determining summary judgment, the court applies a burden-shifting analysis. "When the

2    party moving for summary judgment would bear the burden of proof at trial, it must come forward

3    with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.

4    In such a case, the moving party has the initial burden of establishing the absence of a genuine issue

5    of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213

6    F.3d 474, 480 (9th Cir. 2000) (citations omitted).

7    In contrast, when the nonmoving party bears the burden of proving the claim or defense, the

8    moving party can meet its burden in two ways:  (1) by presenting evidence to negate an essential

9    element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to

10   make a showing sufficient to establish an element essential to that party's case on which that party

11   will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails

12   to meet its initial burden, summary judgment must be denied and the court need not consider the

13   nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

14   If the moving party satisfies its initial burden, the burden then shifts to the opposing party

15   to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith

16   Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing

17   party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the

18   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions

19   of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th

20   Cir. 1987).

21   In other words, the nonmoving party cannot avoid summary judgment by relying solely on

22   conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045

23   (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the

24   pleadings and set forth specific facts by producing competent evidence that shows a genuine issue

25   for trial. *See Celotex Corp.*, 477 U.S. at 324.

26   At summary judgment, a court's function is not to weigh the evidence and determine the

27   truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*,

28

**James C. Mahan
U.S. District Judge**

1   477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable

2   inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is

3   merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at

4   249–50.

5   **IV.   Discussion**

6   **(1)    Plaintiffs' motion to voluntarily dismiss (doc. # 103)**

7          Plaintiffs request dismissal with prejudice of the portion of their cause of action for breach

8   of contract which seeks recovery based upon a guaranty from James and Gregory Harris for payment

9   made by the plaintiffs to Brown & Brown ("the loan guaranty claim").

10         Plaintiffs have not uncovered evidence to contradict defendants' claims that the signatures

11  on the loan guaranty are inauthentic.(Doc. # 100, at 12). Accordingly, on March 21, 2013, plaintiffs

12  wrote defendants, notifying defendants that plaintiffs would be withdrawing their loan guaranty

13  claim. Plaintiffs sought defendants' consent, as dismissal by stipulation is necessary after the filing

14  of an answer or summary judgment under Fed. R. Civ. P. 41(a)(1)(A)(ii).

15         Defendants did not respond to plaintiffs' request to dismiss the claim. Rather, on March 27,

16  2013, defendants filed a second motion for summary judgment relying on alternative arguments.

17  (Doc. # 102). Defendants did acknowledge plaintiffs' request to agree to their motion to dismiss in

18  a footnote of the second motion for summary judgment. (Doc. # 102, at 18, n. 7). Defendants

19  asserted "as this motion was about to be filed, plaintiffs' counsel served a letter stating that plaintiffs

20  intend to file a motion to dismiss their own claim. . . the [defendants] seek judgment on the claim

21  given the seriousness of it and the blatantly false basis for the claim." (Doc. # 102, at 18, n. 7).

22         The Ninth Circuit has held that "a district court should grant a motion for voluntary dismissal

23  under Rule 41(a)(2) unless a defendant can show that it will suffer some plain legal prejudice as a

24  result." *Smith v. Lenches*, 263 F.3d 972, 975 (9th Cir. 2001) (citing *Waller v. Fin. Corp. of Am.,* 828

25  F.2d 579, 583 (9th Cir. 1987)). Legal prejudice means "prejudice to some legal interest, some legal

26  claim, some legal argument." *Westlands Water Dist. v. United States*, 100 F.3d 94, 97 (9th Cir. 1996).

27

28

James C. Mahan
U.S. District Judge

1    Defendants argue that granting a motion for voluntary dismissal would prejudice them by

2    potentially exposing them to significant fees and costs incurred in litigating this specific claim for

3    over two years. The Ninth Circuit has explicitly stated that "the expense incurred in defending

4    against a lawsuit does not amount to legal prejudice." *Id. (citing Hamilton v. Firestone Tire &*

5    *Rubber Co., Inc.*, 679 F.2d 143, 146 (9th Cir. 1982). However, defendants' interests in avoiding

6    substantial costs can be protected by conditioning the dismissal upon plaintiffs paying appropriate

7    costs and fees to defendants. *Westlands*, 100 F.3d at 97; *see* Fed.R.Civ.P. 41(a)(2); *see also*

8    *Hamilton,* 679 F.2d at 146.

9    Defendants "may be awarded fees and costs only for work performed prior to a plaintiff's

10   motion for voluntary dismissal, and then only for work that cannot be used in any future litigation

11   of the same or similar matters." *Hepp v. Conoco, Inc.*, 97 F. App'x 124, 125 (9th Cir. 2004) (citing

12   *Westlands*, 100 F.3d at 97-98). In the instant case, plaintiffs notified defendants of their intent to

13   voluntarily dismiss the portion of their second cause of action prior to the filing of the second motion

14   for summary judgment. Therefore, the court may not grant fees and costs for defendants' arguments

15   in their second motion for summary judgment in relation to this claim.

16   However, the court may award fees and costs incurred in relation to this specific claim up

17   until plaintiffs' letter of March 21, 2013. These fees and costs meet the criteria as set forth in *Hepp*:

18   first, because defendants' work was performed prior to the plaintiffs' motion for voluntary dismissal;

19   and second, because plaintiffs move to dismiss with prejudice, previous work performed in relation

20   to this portion of plaintiffs' second claim cannot be used in future litigation. Therefore, this court

21   will grant plaintiffs' motion to voluntarily dismiss. Defendants may move for attorney's fees at the

22   conclusion of this case.

23   **(2)     Defendants' second motion for summary judgment (doc. # 102)**

24   **(a)     Fraud**

25           (1) Plaintiffs Archway's, NIP's, and Union One's fraud claim

26   Plaintiffs Archway's, NIP's, and Union One's fraud claim is based on the representations of

27   James and Gregory Harris as to the volume of the Harris book of business. During negotiations

28

**James C. Mahan**
**U.S. District Judge**

1 between THA and Brown & Brown for the purchase of the book of business, production reports
2 showed the annual revenue from this book was approximately $3,200,000.

3    In order to satisfy a claim for fraud, plaintiffs must show: (1) the defendants made a false
4 representation; (2) defendants knew or believed that representation to be false; (3) defendants
5 intended to induce plaintiffs to act or refrain from acting upon that representation; (4) plaintiffs
6 justifiably relied upon defendants' representation; and (5) plaintiffs sustained damages as a result.
7 *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386 (1998); *Blanchard v. Blanchard*, 839 P.2d 1320,
8 1322 (1992).

9    First, defendants assert that plaintiffs fail to allege a factual misrepresentation made by the
10 Harrises to the plaintiffs. Defendants claim the settlement agreement for the Brown & Brown book
11 of business shows that THA was the purchasing party. Defendants argue that because plaintiffs were
12 not party to the settlement agreement and purchase of the book of business, plaintiffs cannot show
13 that a false representation was made to any of the plaintiffs in the instant case.

14    Second, defendants allege the production report establishing the value of the book of business
15 was produced by Brown & Brown, not defendants. Therefore, defendants assert it was Brown &
16 Brown making representations to THA.

17    Third, defendants claim that the production report does not contain any false statements.
18 Defendants state that the production report establishes business for the accounts from 2006 to 2007.
19 Defendants argue that plaintiffs only allege that THA did not generate the same level of business in
20 later years. Accordingly, defendants argue that a decrease in business in later years does not mean
21 assertions to the value of the book of business in the past were false.

22    Next, defendants argue plaintiffs cannot satisfy the element of justifiable reliance because
23 the production report was attached to the settlement agreement. Defendants claim that the production
24 report being attached to the settlement agreement disclosed the revenues produced by the book of
25 business and identified the accounts Brown & Brown sold to THA. As such, defendants assert that
26 plaintiffs cannot allege they justifiably relied on any statement to the value of the book of business
27 outside of the settlement agreement.

28

James C. Mahan
U.S. District Judge

- 8 -

1    Finally, defendants argue that plaintiffs do not have standing to present the fraud claim. To

2    establish standing, a plaintiff must show that he suffered an injury, that the defendant's actions were

3    the cause of that injury, and that a ruling in favor of the plaintiff will redress the injury. *See Allen v.*

4    *Wright*, 468 U.S. 737, 751 (1984). Defendants argue that because plaintiffs were not party to the

5    purchase of the book of business between THA and Brown & Brown, plaintiffs do not have standing

6    to assert claims for the monies expended by THA in purchasing the book of business.

7    Plaintiffs argue that based upon the representations about the anticipated revenue from the

8    book of business, plaintiffs Union One and NIP became co-borrowers along with THA on the loan

9    for $2,625,000 used to pay Brown & Brown for the book of business. Plaintiffs further assert that

10   because one of the lenders refused to fund the second installment, plaintiff Archway exercised a line

11   of credit with another bank and directly transferred $1,312,500 to Brown & Brown.

12   Plaintiffs assert that in reliance on the value of the book of business, plaintiffs Archway and

13   Union One provided approximately $600,000 to THA to fund its initial operations. It is not disputed

14   that the book of business generated significantly less revenue than the $3,200,000 representation in

15   the production report.

16   Although plaintiffs were not parties to the Brown & Brown litigation, plaintiffs argue they

17   were intimately involved in negotiating the settlement. Because THA did not have the ability to fund

18   the settlement, plaintiffs Union One and NIP were co-borrowers along with THA on the loan to pay

19   the first installment of the settlement to Brown & Brown. Similarly, plaintiff Archway borrowed and

20   paid the second installment of the settlement agreement.

21   Plaintiffs argue that the production report for the book of business contained false

22   information because it claimed the anticipated revenue for the book of business would be

23   $3,200,000. Plaintiffs relied upon this value in agreeing to fund portions of the settlement agreement.

24   Accordingly, plaintiffs argue that the substantial decrease in revenue from the book of business is

25   evidence that defendants' representations to the value of the book was incorrect.

26   Plaintiffs allege James Harris diverted business to defendant Harris Consulting Services,

27   claiming that he was forced to retire from THA for health reasons. As a result, THA failed to

28

**James C. Mahan**
**U.S. District Judge**

- 9 -

1  continue business and was placed in the hands of the chapter 11 trustee.

2       Plaintiffs claim that they also have standing to challenge because NIP, which was the parent

3  of THA, and Union One and Archway (which had overlapping memberships with NIP) negotiated

4  with Brown & Brown to resolve the lawsuit so THA could receive the Brown & Brown book of

5  business.

6       However, plaintiffs have not alleged that defendants made a factual misrepresentation as to

7  the value of the Brown & Brown book of business at the time of sale through the settlement

8  agreement. Rather, plaintiffs allege defendants materially misrepresented the future value of the book

9  of business. Plaintiffs have not provided any evidence to demonstrate that the book of business did

10  not account for $3,200,000 worth of revenue at the time of sale, nor that any promise was made to

11  them that future profits would be similar.

12       Defendants' valuation of the book of business constitutes nothing beyond an opinion of what

13  the book would be worth in the future. Opinions to the future valuation of something do not "satisfy

14  the first necessary element of actionable fraud, misrepresentation of an existing fact, unless there

15  existed a present intent not to attempt the future fulfillment of the promises." *Fruit Indus. Research*

16  *Found. v. Nat'l Cash Register Co.*, 406 F.2d 546, 549-50 (9th Cir. 1969) (citing *Shook v. Scott*, 56

17  Wash.2d 351, 353 P.2d 431 (1960)).

18       Plaintiffs have not provided factual support to their allegation that defendants materially

19  misrepresented the value of the Brown & Brown book of business at the time of sale. Accordingly,

20  plaintiffs' cause of action for fraud must fail as a matter of law. The court grants defendants' motion

21  for summary judgment as to this cause of action.

22       (2) Plaintiff Trinity's fraud claim

23       Plaintiff Trinity's claim for fraud is that James Harris represented he would remain with

24  THA, despite the absence of an employment agreement. Plaintiffs assert Harris claimed he would

25  devote his best efforts to developing THA's business if the principals of plaintiffs would infuse THA

26  with cash to meet its operating needs after he began work there. Relying on this representation,

27  plaintiff Trinity provided approximately $110,000 financing to THA while it was operating as a

28

James C. Mahan
U.S. District Judge

1  debtor-in-possession.

2      Plaintiffs have not provided evidence beyond mere allegations of James Harris'

3  representation that he would remain with THA. Plaintiffs cannot avoid summary judgment by relying

4  solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d

5  1040, 1045 (9th Cir. 1989). Because the plaintiffs have not produced competent evidence that shows

6  a genuine issue for trial as to James Harris' representation he would remain with THA, summary

7  judgment is appropriate. *See Celotex Corp.*, 477 U.S. at 324. The court grants defendants' motion

8  for summary judgment as to this cause of action.

9  **(b)    Breach of contract**

10          (1) Dianne Curry employment agreement

11      Plaintiffs assert that the failure of defendants to honor their guaranty of the loan extended to

12  Dianne Curry ("Curry") constitutes a material breach of contract.

13      Defendants assert that plaintiffs' claim fails because no loan was made to Curry. Instead,

14  defendants argue that money received by Curry was a "bonus" as it is referred to in the employment

15  agreement. (Doc. # 102, ex. 10). Therefore, defendants argue there cannot be a guaranty of a loan

16  when no such loan existed. Defendants further assert that the employment agreement in question is

17  between THA and Curry, and therefore, plaintiffs lack standing to challenge it.

18      Defendants also allege that plaintiffs' claim fails to satisfy the writing requirement for a claim

19  seeking to enforce a guaranty. NRS § 111.220(2) establishes that "every agreement is void, unless

20  the agreement. . . is in writing, and subscribed by the person charged therewith." Defendants claim

21  the complaint does not indicate that the Harrises entered into a signed and written agreement.

22      Lastly, defendants argue Greg Harris, not the plaintiffs, owns any claims for relief belonging

23  to THA. Defendants state Greg Harris purchased the assets of THA, including any claims it might

24  have against the Harrises. Therefore, because Greg Harris purchased the right to such claims,

25  plaintiffs cannot argue they are entitled to assert such claims.

26      Plaintiffs argue there is a factual dispute as to the nature of the $25,000 payment made to

27  Curry. Plaintiffs rely on an email sent by Mr. Milbert, a partner of plaintiff Union One, dated June

28

1, 2007. That email indicates that the $25,000 was to be used for Curry to purchase a house. The email proclaims James Harris could not obtain the loan directly because he is on the board of the bank and therefore cannot make personal loans for real estate transactions. The email also states James Harris would repay the $25,000 out of his first commission check.

In response to the lack of standing argument, plaintiffs argue they are not seeking to assert claims on behalf of THA. Rather, plaintiffs are seeking monies which they advanced to THA based on the representations of defendants.

Plaintiffs further assert their claims for repayment are not barred by the statute of frauds as proscribed by NRS § 111.220(2). Plaintiffs argue defendants' assertion fails because: first, Union One fully performed its obligation in the contract by forwarding the $25,000; and second, because the doctrine of equitable estoppel prevents application of the statute of frauds.

To establish a cause of action for breach of contract, the plaintiff must show "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damages as a result of the breach." *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006) (citing *Richardson v. Jones*, 1 Nev. 405, 405 (Nev.1865)).

In the instant matter, plaintiffs have not provided evidence of the existence of a valid contract in regard to the loan guaranty. Under Nevada law, any agreement to answer for the debt of another is void unless provided in writing and signed by the guarantor. NRS § 111.220(2). As evidence, plaintiffs reference Mr. Milbert's email that demonstrates their belief the $25,000 was a loan to be repaid by James Harris. However, this email is hearsay and does not qualify for any of the rule's exceptions. Although Harris is listed as a recipient on the email, he was not the party making the declaration the plaintiff seeks to admit.

Because plaintiffs have not provided any admissible written document to show a valid contract exists, their claim must fail. Therefore, the defendants' motion for summary judgment on this claim will be granted.

<u>(2) Intercompany loan agreement guaranty claim</u>

Defendants assert that the signatures on the intercompany loan agreement guaranty are not

1    authentic. In plaintiffs' motion to voluntarily dismiss this portion of their second claim, plaintiffs

2    admit they have not uncovered evidence to contradict defendants' claims that the signatures on the

3    loan guaranty are not genuine. (Doc. # 100, at 12). Accordingly, there is no genuine issue for trial.

4    *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Therefore, defendants' motion for

5    summary judgment on this claim will be granted.

6    **(3)    Plaintiffs' motion to dismiss defendants' counterclaims (doc. # 101)**

7          Defendants have asserted counterclaims for: (1) abuse of process; (2) unlawful use of

8    personal identifying information in violation of NRS 41.1345; and (3) injunctive relief and

9    enforcement of the bankruptcy court's order.  (*See* answer, doc. # 94, ¶ 71-120).

10                    (1) Abuse of process

11          The elements of a claim for abuse of process are: (1) an ulterior purpose by the defendants

12    other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper

13    in the regular conduct of the proceeding. *Posadas v. City of Reno*, 851 P.2d 438, 457 (Nev. 1993);

14    *Kovacs v. Acosta*, 787 P.2d 368, 369 (Nev. 1990).

15          Defendants allege that the filing of the complaint was done with the ulterior purpose to extort

16    concessions and money in prior actions, or to force defendants to agree to certain contracts.

17          Under Nevada law, "the mere filing of [a] complaint is insufficient to establish the tort of

18    abuse of process." *Fagin v. Doby George, LLC*, 2011 WL 3425632 (D. Nev. Aug. 3, 2011)(quoting

19    *Childs v. Selznick*, Nos 49342, 51919, 2009 WL 3189335 at *2 (Nev. 2009); *Laxalt v. McClatchy*,

20    622 F.Supp. 737, 752 (D. Nev. 1985)).  This counterclaim rests on plaintiffs' filing of this action,

21    and defendants have not alleged any other act that constitutes abuse.  Even assuming plaintiffs filed

22    this action with an improper ulterior purpose, this claim fails as a matter of law.  *Fagin*, 2011 WL

23    3425632 at *3.

24                    (2) Unlawful use of personal identifying information

25          NRS 41.1345 provides that "[a] person who has suffered injury as the proximate result of a

26    violation of the provisions of NRS 205.463, 205.464 or 205.465 may commence an action for the

27    recovery of the person's actual damages, costs and reasonable attorney's fees and for any punitive

28

**James C. Mahan**
**U.S. District Judge**

                                                    - 13 -

damages that the facts may warrant." NRS 41.1345(1). This statute provides for a 2 year statute of limitations beginning at the time "the person who suffered the injury discovers the facts constituting the violation. . ." NRS 41.1345(2).

Defendants allege that plaintiffs obtained their names and signatures and "drafted, copied, or otherwise created a version(s) of those signatures to attach the same to the purported loan guaranty document that appears to be the basis for [p]laintiffs' claims of breach of contract in this case." (Doc. # 94, ¶ 87-88). On January 14, 2011, defendants provided affidavits in support of their motion to dismiss providing:

> 32. On October 19, 2010, in the THA bankruptcy, Frederick Milbert filed a Joiner of Interest [sic] Party in Trustee's Turnover Motion ("Joinder") that attached numerous documents, including the document entitled, "Inter-Company Loan Agreement". . .

> 33. Prior to the time when Milbert filed his Joinder, neither James Harris nor Greg Harris had ever seen the Inter-Company Loan Agreement. *The document purports to have the signature of, among others, James Harris and Greg Harris. In fact, James Harris did not sign it. In fact, Greg Harris did not sign it.*

(Greg Harris Affidavit, p. 9-10, ¶¶ 32,24) (emphasis added). James Harris submitted an affidavit containing the identical paragraphs. (James Harris' affidavit, p. 8-9, ¶¶ 28, 30).

By defendants' own admissions, they were aware of the alleged forgery of their signatures on January 14, 2011, at the very latest. The instant counterclaim was not filed until February 27, 2013, which is over two years from the discovery of the injury. This claim is therefore barred by the statute of limitations.

### (3) Enforcement of the bankruptcy court's order

Defendants assert that the instant complaint is a violation of the bankruptcy court's order enjoining claims by THA against defendants. Defendants seek injunctive relief that enjoins plaintiffs from engaging in "further interferences with the bankruptcy court order, the sale, and the injunction entered by the bankruptcy court."

. . .

James C. Mahan
U.S. District Judge

- 14 -

The court is without subject matter jurisdiction to hear this claim. The court cannot enforce an alleged violation of the Bankruptcy Court's injunction. *Arata v. Nu Skin Intern, Inc.*, 96 F.3d 1265, 1269 n.2 (9th Cir. 1996) (citing *18 U.S.C. § 401; Lubrizol Corp. v. Exxon Corp.,* 871 F.2d 1279, 1282-83 (5th Cir.1989)*; Treadaway v. Academy of Motion Picture Arts & Sciences,* 783 F.2d 1418, 1422 (9th Cir.1986) (Fed. R. Civ. P. 60(b) motion for relief from a court order should generally be brought only in that court unless seeking to determine the res judicata effect)).

The defendants are not seeking to determine the res judicata effect of the bankruptcy court's order, but rather are seeking relief to enforce that order. However, this is not the proper forum to seek such relief. Defendants' third counterclaim is dismissed.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiffs' motion for voluntary dismissal of the portion of their second cause of action for breach of contract (doc. # 103) be, and the same hereby is, GRANTED consistent with the conditions set forth *infra* section IV(1).

IT IS FURTHER ORDERED that defendants' motion for summary judgment (doc. # 102) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiffs' motion to dismiss defendants' counterclaims (doc. # 101) be, and same hereby is, GRANTED.

DATED February 18, 2014.

_____
**UNITED STATES DISTRICT JUDGE**

James C. Mahan
U.S. District Judge

- 15 -